DOUCET, Judge.
This appeal presents the issue of the custody of three children. The trial judge awarded the physical custody of Rodney D. Hulin, age 6, Suzette Hulin, age 4 and Rynell Hulin, age 3, to their father, Rodney James Hulin. The court further awarded the custody of the children to the Louisiana Department of Health and Human Resources. Linda Hulin, the mother, was given specific visitation rights. From this judgment Linda Hulin appeals. We affirm in part and reverse in part.
Rodney and Linda Hulin were legally separated by an uncontested judgment rendered in November 1982. The court awarded custody of the child, Rodney, to the father, and Suzette and Rynell to the mother.
In May 1983 Rodney filed suit for divorce on the ground of adultery and for custody of all three children. This suit was uncontested and Rodney was awarded a judgment of divorce and custody of the *970 three children. In March 1984, due to visitation problems, Rodney filed a writ of habeas corpus alleging that Linda would not return Suzette after a visitation. Linda reconvened for custody of the three children. This proceeding was tried. The writ of habeas corpus was granted and Linda was ordered to deliver Suzette to Rodney. Physical custody of the three children was awarded to Rodney Hulin and “legal” custody was awarded to the Department of Health and Human Resources (Department).
On appeal, Linda Hulin contends that the trial court erred in awarding physical custody of the children to Rodney. Also, it is contended that the trial court had no authority to award legal custody to the Department.[1]
THE MOTHER’S WITNESSES
Joyce Washington, a protective service worker with the Office of Human Development, testified that the Hulins first came to her attention in February 1982. A complaint was received by the Sheriffs Department that a two year old child received bruises indicating child abuse. She investigated the problem by interviewing Linda and Rodney. She concluded that Linda was primarily the abusive parent. In December 1983, Linda informed this service worker that Suzette was with her for visitation and that the child showed signs of sexual abuse. An investigation resulted in a physician’s examination which revealed that the child had a rash which resulted from improper hygiene training and bed-wetting. The doctor found no evidence of sexual abuse. Ms. Washington remained in contact with Linda but had difficulty doing so as she moved around quite often. It was noted by Ms. Washington, Linda was living with Roger Primrose during the time of her supervision.
She stated that Rodney and the children moved from Natchitoches to Beaumont, Texas in October 1983. This move was made for the purpose of securing employment. Rodney moved in with his mother who would attend to the children while Rodney worked. She stated that if Rodney continued with the custody of the children, she could find no objection to this as he was employed and his mother was there to help with the children.
Linda Hulin admitted that she had been living with Roger Primrose for some time. The record does not reflect exactly when she began this relationship but it is clear that it began before the divorce judgment rendered on May 25, 1983. Two of the children were living with her during this time prior to the divorce. She continued to live with Primrose up until approximately one month before trial. At that time she got a job making $3.60 per hour and moved into a housing project. She stated, however, that she continued dating Roger and had spent one night with him after she left him.
She further testified that she had received treatment at the mental health center and the substance abuse center. The record indicates that she had emotional problems and a possible alcohol problem.
Patricia Milstead, Linda’s sister, testified that she heard Rodney mention that he may put the children in a foster home. Rodney, in his testimony, stated that when he first moved to Texas, he was unemployed and thought about placing the children in a temporary home until he could find employment and become financially able to support the children. He didn’t have to place the children, however, as he found steady employment and was able to keep the children at his mother’s house. Patricia Milstead also stated that Linda was very impatient with the children, spanked them and yelled at them frequently-
Susan Haire testified that she was the roommate of Linda and had been so for about one month. Susan attends the Vo-tech school in Natchitoches. She stated that she would be willing to help Linda attend to the children if they were awarded to Linda.
*971 Linda Cohen, head of the Natchitoches Substance Abuse Center, stated that she had seen Linda on six occasions to counsel her concerning her emotional problems.
THE FATHER’S WITNESSES
Rodney Hulin testified that when he got custody of the children in May 1983, he was working as a roofer and had put the children in a day care center while at work. He took care of them the remainder of the day. In order to obtain better working conditions he moved in with his mother in Beaumont, Texas. His mother has a large three bedroom house. He obtained steady employment at the Ramada Inn earning a gross of $900.00 per month. He stated that his mother had grown fond of the children. The mother worked from 4:00 P.M. until 8:00 P.M. During the day she took care of the children. Rodney got home from work at 3:00 P.M. before his mother went to work.
Ethel Greer, sister of Linda, stated that Linda had two of the children with her during Christmas of 1983. Linda brought the two children, Suzette and Rynell, to her home in Shreveport for several days. She stated that Linda could not control her emotions. Linda would yell at, curse and spank the children. She struck Suzette in the face léaving a hand print. Over the objection of Ethel, Linda took Rynell out into cold weather when the child had flu. Ethel noticed that Linda would offer no affection to Suzette. Ethel noted that Rodney would call fairly often to inquire about the children.
Shirley Odom, another of Linda’s sisters of Shreveport, testified as to Linda’s temper and abusive attitude toward the children. She noted that the children looked good when they first arrived from Rodney’s care in Texas.
After hearing this evidence the trial court continued the custody of the children with the father, Rodney, stating in his reasons for judgment that Linda has made progress in stabilizing her life, but had not reached the point of stability when she could be awarded custody. The trial court noted that Rodney Hulin “had the custody of these children for several months and has maintained steady employment and a stable home environment to provide for these children. He lives with his mother who assists him in the rearing of the children.”
The evidence fully supports the trial court’s conclusion that, as between Rodney and Linda, Rodney is better suited to provide a suitable home for the children. The sole criterion applicable in change of custody cases is the best interest of the children. Bordelon v. Bordelon, 390 So.2d 1325 (La.1980). The duty of the court is to determine the best interest of the children based upon the relative fitness and ability of competing parents to care for the children. Suire v. Jagneaux, 422 So.2d 572 (La.App. 3rd Cir.1982). The trial court’s discretion in such cases will not be disturbed absent a clear showing of abuse of discretion. Bordelon v. Bordelon, supra.
Counsel for Linda contends that Linda has “reformed” prior to trial. The facts, as previously discussed, do not support such a contention. For a discussion of “reformation” see Shackleford v. Shackleford, 389 So.2d 825 (La.App. 3rd Cir.1980).
“LEGAL” CUSTODY AWARD TO THE DEPARTMENT OF HEALTH AND HUMAN RESOURCES
Counsel for the defendant contends that the trial court erred in granting custody to the Department.
The trial court in its reasons for judgment stated that, due to the allegations of the parties against each other concerning adultery, child abuse, drug abuse, alcohol abuse, child neglect and general instability, legal custody was awarded to the Department primarily for their observation.
The award of custody to the Department was error for the reason that such a custody award can only be made under the procedure set forth in provisions of the Juvenile Code. The Code contains special procedural provisions for adjudicating a *972 child or children “in need of care.” If the child is adjudicated to be in need of care, the court can then place the custody with the Department.
An award of custody to the Department in this type of proceeding is not authorized.
We may add that the testimony, tending to show child abuse, instability and drug abuse, concerned primarily Linda’s conduct. There is little evidence that Rodney Hulin exhibited such qualities. Therefore, the concern of the trial court will be monitored by the Office of Human Development in Natchitoches as Joyce Washington stated that she, as part of her normal duties, will stay in contact with Linda and would monitor the situation while the children are with Linda on visitation. Also Ms. Washington stated that, if necessary, the comparable Texas agency could, through a reciprocal compact, monitor the condition in the home of Rodney Hulin. She stated, however, she saw little need for such a report from Texas.
For these reasons, the judgment of the trial court insofar as it places custody with the Louisiana Department of Health and Human Resources is reversed and set aside. It is ordered that the custody of the children, Rodney, Suzette and Rynell be awarded to the father, Rodney Hulin.
The remainder of the judgment, concerning visitation rights of Linda, is affirmed. The costs of this appeal shall be paid by the appellant, Linda Hulin.
REVERSED AND RENDERED IN PART AND AFFIRMED IN PART.

. No brief was filed by appellee.